OPINION OF THE COURT
Titone, J.
In these cases involving local zoning regulations, we are called upon to determine the proper method of balancing the needs and rights of educational institutions that desire to expand or construct into purely residential neighborhoods against the concerns of the surrounding residents about the potential inconveniences. We hold that the presumption that educational uses are always in furtherance of the public health, safety and morals may be rebutted by a showing that the proposed use would actually have a net negative impact, and that a reasonably drawn special permit requirement may be used to balance the competing interests in this area. In all instances, the governing standard should be the protection of the public’s health, safety, welfare and morals. Since in these cases the schools involved were prevented from implementing their expansion plans for reasons not related to these considerations, the denial of their applications was improper.
I.
Plaintiff Cornell University sought to relocate its Modern Indonesia Project, an interdisciplinary academic program involving approximately 15 people on a full-time basis, to a large house it owned in the Cornell Heights area abutting the Cornell campus. Uses permitted in that area, zoned R-2a, included one- and two-family dwellings, churches, public parks or playgrounds, libraries, public or parochial schools and fire stations. Private schools were allowed by special permit of the Board. A "school” was defined as a "public, private or church-affiliated establishment academically below the college level, for the education of children and for adults in subjects or skills” (City of Ithaca Zoning Ordinance § 30.3 [78]).
Having assumed that its proposed use did not accord with uses allowed as of right or by special permit in the area, plaintiff applied for a variance, which the local Board of Zoning Appeals is empowered to issue where zoning restrictions impose "practical difficulties or unnecessary hardship” *590 (City of Ithaca Zoning Ordinance § 30.58 [B] [3]). After a hearing, plaintiffs variance application was denied. The Board found that Cornell would suffer no hardship if the variance were denied and concluded that there would be potential unspecified damage to the character of the neighborhood. The Board further stressed that Cornell had shown no need to move its program to the particular site it had chosen.
Plaintiff then commenced a declaratory judgment action seeking a declaration that the ordinance was "unconstitutional, illegal and invalid and/or unconstitutionally, illegally, and invalidly applied to plaintiff”. Supreme Court, after trial, adjudged that the proposed use was an educational use that would not endanger the public’s health, safety or welfare, that the provisions of the zoning ordinance as applied to prevent plaintiff from using its property for the Modern Indonesia Project were void and ineffective and that defendants should be restrained from interfering with the proposed use of plaintiffs property.
The Appellate Division modified the judgment. That court first substituted for the trial court’s declaration concerning the invalidity of the ordinance a narrower declaration of its own that the ordinance was invalid to the extent that it required a variance for the proposed use and conditioned the granting of a variance on a showing of hardship. Such requirements, the court held, do not bear a substantial relation to public health, safety, morals or general welfare and are therefore improper. The court also held that the City of Ithaca Zoning Ordinance impermissibly distinguished between educational uses at the college level and those below. Having thus partially invalidated the ordinance, the court concluded that the proposed use fell within the category of uses available with a special permit. As a consequence, the court converted the remainder of the action into a proceeding under CPLR article 78 and remitted the matter to the Board to consider whether a special permit should be granted and whether any restrictions or conditions should be imposed.
After this decision and this court’s subsequent decision to grant both sides leave to appeal under CPLR 5602 (a) (2) (see, Matter of Lakeland Water Dist. v Onondaga County Water Auth., 24 NY2d 400), the zoning ordinance was amended to eliminate the need for a variance for uses such as that proposed by Cornell and to remove any distinctions between levels of educational use. Under the amended ordinance, all *591 educational uses are permitted subject to obtaining a special permit. The section governing the issuance of special permits was also amended to add a requirement that the property owner show the need to use the particular site chosen for the educational use.
II.
Sarah Lawrence College sought to house 13 students and 1 staff member in a private house across the street from its main campus. The building is located in an S-200 residential district where a college use is allowed, but only by special permit. The ordinance delineating the factors to be considered in determining whether a special permit should be issued states, in part:
"C. Such permit may be granted subject to such additional conditions and safeguards as may be deemed by the Board to be advisable and appropriate.
"D. Such use shall be found by the Board to be in harmony with the general purposes and intent of this Chapter.
"E. Such use shall not affect adversely the character of the district, nor the conservation of property values, nor the health and safety of residents or workers on adjacent properties and in the general neighborhood.
"F. Such use shall be of such appropriate size, and so located and laid-out in relation to its access streets, that vehicular and pedestrian traffic to and from such use will not create undue congestion or hazards prejudicial to the character of the general neighborhood.
"G. Such use shall not conflict with the direction of building development in accordance with any Master Plan or portion thereof which has been adopted by the Planning Board.”
The Planning Board issued an unfavorable report finding, upon the college’s application, that the proposed use might depreciate property values, would increase traffic, would damage the character of the neighborhood and would lead to other similar applications along the same street. Furthermore, the Board found that the house was not contiguous to other college-related facilities and that sufficient evidence of need for an additional dormitory facility had not been adduced. Sarah Lawrence then submitted its application to the Zoning Board of Appeals for a special permit on the ground that the percentage of its students seeking on-campus housing had *592 increased immeasurably and that the facilities available on the actual campus could no longer house all of them.
Following a hearing, the Zoning Board of Appeals denied the application, basing its decision on the college’s lack of need to expand and its conclusion that any hardship or practical difficulties borne by the college were self-included. The Board further deemed the college’s traffic survey unrepresentative of local conditions and stated that the college’s experts did not prove to its satisfaction that surrounding property values would not be adversely affected by the proposed student housing arrangements.
Sarah Lawrence thereafter commenced an article 78 proceeding, which resulted in the annulment of the Board’s determination and a direction that it issue the permit. The court concluded that the evidence at the hearing could not support a determination that the proposed use would pose a health or safety hazard or have an adverse impact on the neighborhood. The Appellate Division, however, reversed, finding that the Board’s determination was not arbitrary and capricious and that it was supported by substantial evidence.
III.
Initially, the unusual circumstances in the Cornell Univ. v Bagnardi case present the question whether plaintiff’s appeal should be dismissed on mootness grounds because of the recent amendments to the City of Ithaca’s zoning ordinance. Notably, the zoning ordinance, whose constitutionality plaintiff attacked, has been repealed, and it is the amended ordinance which will unquestionably govern plaintiff’s new application for a special permit. Therefore, that portion of plaintiff’s declaratory judgment action which seeks a declaration that the former City of Ithaca zoning ordinance was unconstitutional, or unconstitutional as applied, is clearly moot (see, Matter of Sibarco Stas, v Town Bd., 24 NY2d 900). Remaining in controversy, however, is the university’s attempt to enjoin defendants entirely from interfering with plaintiff’s proposed project, relief which was granted after trial and reversed by the Appellate Division. Because that aspect of the controversy remains live, the appeal should not be dismissed and the merits may be addressed.
IV.
The rules governing the relationship between the right of *593 educational institutions to expand and the right of municipalities to regulate land use cannot be fully understood without reference to their background. Historically, schools and churches have enjoyed special treatment with respect to residential zoning ordinances and have been permitted to expand into neighborhoods where nonconforming uses would otherwise not have been allowed. Such favored status once seemed unobjectionable, since elementary schools and small churches serving the surrounding area were welcomed as benefits to the neighborhood. However, the advent of the automobile, as well as the growth and diversification of religious and educational institutions, brought a host of new problems. Sprawling universities brought increased traffic and other unexpected inconveniences to their neighbors, while the benefits these universities conferred were becoming less relevant to the residents of the immediately surrounding areas. Thus, neighbors who may have formerly welcomed the construction of a new school began to view its arrival with distrust and concern that it would unnecessarily bring people from other communities into the neighborhood to disrupt its peace and quiet.
With this change in attitude, courts were thrust into the role of protecting educational institutions from community hostility. Zoning ordinances that imposed limitations on the construction of public schools were held to conflict with the general law of the State (Union Free School Dist. v Village of Hewlett Bay Park, 198 Misc 932, affd 278 App Div 706; 2 Anderson, American Law of Zoning § 12.09, at 419-420 [2d ed]). The construction of parochial schools would not bear interference because of both their educational nature and the First Amendment protections afforded those schools (see, Matter of Diocese of Rochester v Planning Bd., 1 NY2d 508; 2 Rathkopf, Zoning and Planning § 20.02 [3], at 20-18). And, an ordinance which permitted public schools but excluded religious or private schools would not withstand challenge in New York (Matter of Diocese of Rochester v Planning Bd., supra, at p 526).
On a broader level, the courts held that schools, public, parochial and private, by their very nature, singularly serve the public’s welfare and morals (Matter of New York Inst. of Technology v Le Boutillier, 33 NY2d 125, 130; Matter of Concordia Coll. Inst. v Miller, 301 NY 189, 195; Matter of Summit School v Neugent, 82 AD2d 463). Colleges and universities were also recognized as serving the public’s welfare in *594 the same important ways (see, e.g., Matter of Concordia Coll. Inst. v Miller, supra; Long Is. Univ. v Tappan, 202 Misc 956, affd 281 App Div 771, affd 305 NY 893; compare, Yanow v Seven Oaks Park, 11 NJ 341, 94 A2d 482). Because of the inherently beneficial nature of churches and schools to the public, we held that the total exclusion of such institutions from a residential district serves no end that is reasonably related to the morals, health, welfare and safety of the community (Matter of Diocese of Rochester v Planning Bd., supra, at p 522; 2 Anderson, American Law of Zoning § 12.10, at 422 [2d ed]; 2 Rathkopf, Zoning and Planning § 20.01 [4], at 20-9). Since a municipality’s power to regulate land use is derived solely from its right to use its police powers to promote these goals, such total exclusion is beyond the scope of the localities’ zoning authority (Matter of Westchester Reform Temple v Brown, 22 NY2d 488, 493; see also, Euclid v Ambler Co., 272 US 365, 395; 2 Rathkopf, Zoning and Planning § 20.01 [2] [a]; 1 Rohan, Zoning and Land Use Controls § 3.05 [2], at 3-219).
These general rules, however, were interpreted by some courts to demand a full exemption from zoning rules for all educational and church uses (see, e.g., Matter of Property Owners Assn. v Board of Zoning Appeals, 2 Misc 2d 309 [requiring a special permit be issued for an athletic stadium seating 4,000 spectators]; Zoning Regulations as Applied to Schools, Colleges, Universities and the Like, Ann., 36 ALR2d 653, 664; 2 Rathkopf, Zoning and Planning § 20.01 [2] [a]). The result has been to render municipalities powerless in the face of a religious or educational institution’s proposed expansion, no matter how offensive, overpowering or unsafe to a residential neighborhood the use might be. Such an interpretation, however, is mandated neither by the case law of our State nor common sense.
Although in Matter of Diocese of Rochester v Planning Bd. (1 NY2d 508, supra), we found an exclusion of a religious use to be arbitrary and unreasonable, we rejected any conclusive presumption of an entitlement to an exemption from zoning ordinances. In that regard, we explicitly rejected any argument that "appropriate restrictions may never be imposed with respect to a church and school and accessory uses” or that "under no circumstances may [such uses] ever be excluded from designated areas” (id., at p 526). Furthermore, while we stated in Matter of New York Inst. of Technology v Le Boutillier (33 NY2d 125, supra) that ordinarily the factors bearing on public health, safety and welfare such as traffic *595 hazards, impairment of the use, enjoyment or value of properties in surrounding areas and deterioration of appearance of an area would not be weighty enough to foreclose an educational use in a residential area (id., at p 131), we did not intend to establish a rigid rule that educational or religious uses may never properly be found to conflict with these factors to such an extent as to endanger the public’s health, safety, welfare or morals.
The controlling consideration in reviewing the request of a school or church for permission to expand into a residential area must always be the over-all impact on the public’s welfare. Although the special treatment afforded schools and churches stems from their presumed beneficial effect on the community, there are many instances in which a particular educational or religious use may actually detract from the public’s health, safety, welfare or morals. In those instances, the institution may be properly denied. There is simply no conclusive presumption that any religious or educational use automatically outweighs its ill effects (Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor, 38 NY2d 283, 292 [Breitel, Ch. J., concurring], cert denied 426 US 950). The presumed beneficial effect may be rebutted with evidence of a significant impact on traffic congestion, property values, municipal services and the like.
Thus, educational and religious uses which would unarguably be contrary to the public’s health, safety or welfare need not be permitted at all. A community that resides in close proximity to a college should not be obliged to stand helpless in the face of proposed uses that are dangerous to the surrounding area. Such uses, which are clearly not what the court had in mind when it stated that traffic and similar problems are outweighed by the benefits a church or school brings (Matter of Westchester Reform Temple v Brown, 22 NY2d 488, 496-497, supra), are unquestionably within the municipality’s police power to exclude altogether. "[E]yen religious [and educational] institutions [must] accommodate to factors directly relevant to public health, safety or welfare, inclusive of fire and similar emergency risks, and traffic conditions insofar as they involve public safety [citations omitted]” (Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor, supra, at pp 291-292 [Breitel, Ch. J., concurring]).
Less extreme forms of expansion that are nonetheless ob *596 noxious to the community’s residents, of course, require a more balanced approach than total exclusion. "[I]n Matter of Westchester Reform Temple v Brown (22 NY2d 488, 496) * * * the court recognized that 'considerations which may wholly justify the exclusion of commercial structures from residential areas * * * [may] * * * be considered for the purpose of minimizing, insofar as practicable, the impairment of surrounding areas or the danger of traffic hazards’ ” (Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor, supra, at p 292 [Breitel, Ch. J., concurring]). A special permit may be required and reasonable conditions directly related to the public’s health, safety and welfare may be imposed to the same extent that they may be imposed on noneducational applicants (Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor, supra, at pp 291-292 [Breitel, Ch. J., concurring]; Matter of Summit School v Neugent, 82 AD2d 463, 466, supra; see, Matter of Diocese of Rochester v Planning Bd., 1 NY2d 508, 526, supra). Thus, a zoning ordinance may properly provide that the granting of a special permit to churches or schools may be conditioned on the effect the use would have on traffic congestion, property values, municipal services, the general plan for development of the community, etc. (see generally, 2 Anderson, New York Zoning Law and Practice ch 24 [3d ed]). The requirement of a special permit application, which entails disclosure of site plans, parking facilities, and other features of the institution’s proposed use, is beneficial in that it affords zoning boards an opportunity to weigh the proposed use in relation to neighboring land uses and to cushion any adverse effects by the imposition of conditions designed to mitigate them (2 Rathkopf, Zoning and Planning § 20.01 [4], at 20-11). These conditions, if reasonably designed to counteract the deleterious effects on the public’s welfare of a proposed religious or educational use should be upheld by the courts, provided they do not, by their cost, magnitude or volume, operate indirectly to exclude such uses altogether (see, 2 Anderson, American Law of Zoning § 12.11, at 426 [2d ed]).
V.
In each of the cases before us these standards were not properly applied. The zoning boards involved in each case were, in fact, using an impermissible criterion in that they demanded that the schools make a showing of affirmative *597 need for the proposed expansion. The boards’ use of this criterion may have been based, in part, on our decision in Matter of New York Inst. of Technology v Le Boutillier (33 NY2d 125, supra), in which we upheld a zoning appeal board’s denial of a school’s special permit based upon the lack of even a "colorable need” to expand (id., at p 131). A requirement of a showing of need to expand (Sarah Lawrence Coll. v Zoning Bd. of Appeals), or even more stringently, a need to expand to the particular location chosen (Cornell Univ. v Bagnardi; see, Matter of Community Synagogue v Bates, 1 NY2d 445), however, has no bearing whatsoever upon the public’s health, safety, welfare or morals. The imposition of such a requirement, or any other requirement unrelated to the public’s health, safety or welfare, is, therefore, beyond the scope of the municipality’s police power, and, thus, impermissible. To the extent that New York Inst. of Technology v Le Boutillier (supra) may be construed otherwise, it should not be followed. In addition, the board’s requirement in Sarah Lawrence Coll. v Zoning Bd. of Appeals, that the college show that no ill effects will result from the proposed use in order to receive a special permit, is improper because it fails to recognize that educational and religious uses ordinarily have inherent beneficial effects that must be weighed against their potential for harming the community.
In light of our holding that the institutions’ need to expand may not be considered and that the possible ill effects their proposed uses may have on the surrounding area may be taken into account, the applications of both Cornell and Sarah Lawrence must be reconsidered by the local zoning boards of appeal. Both schools should be given the opportunity to apply for special permits without having to show a special need, and the municipalities in which they are located should be given the opportunity to determine whether reasonable conditions should be imposed that would mitigate any deleterious effects on the surrounding community. Although the recently amended ordinance of the City of Ithaca is not technically before us, we note that, in accordance with this opinion, its requirement of a showing of need may not validly be applied to plaintiff Cornell’s application.
Accordingly, in Cornell Univ. v Bagnardi, the order of the Appellate Division should be modified, with costs to plaintiff, by striking, as moot, so much of that order as declared the City of Ithaca’s zoning ordinance partially invalid and remitting the matter to the Board of Zoning Appeals for considera *598 tian of Cornell’s special use permit application in accordance with this opinion. In Matter of Sarah Lawrence Coll. v Zoning Bd. of Appeals, the order of the Appellate Division should be reversed, with costs, and the matter remitted to the Zoning Board of Appeals for consideration of Sarah Lawrence’s special use permit application, in accordance with this opinion.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye and Alexander concur; Judge Hancock, Jr., taking no part.
In Cornell Univ. v Barnardi: Order modified, with costs to plaintiff, and matter remitted to Supreme Court, Tompkins County, with directions to remand to the Board of Zoning Appeals of the City of Ithaca for consideration of the special use permit application in accordance with the opinion herein and, as so modified, affirmed.
In Matter of Sarah Lawrence Coll. v Zoning Bd. of Appeals: Order reversed, with costs, and matter remitted to Supreme Court, Westchester County, with directions to remand to the Zoning Board of Appeals of the City of Yonkers for consideration of the special use permit application in accordance with the opinion herein.