91 N.Y.2d 161 (1997)
690 N.E.2d 862
667 N.Y.S.2d 978
Trustees of Union College in the Town of Schenectady in the State of New York, Respondent,
v.
Members of the Schenectady City Council et al., Appellants; Realty Plot Association, Inc., Intervenor-Appellant.
Court of Appeals of the State of New York.
Argued November 19, 1997
Decided December 18, 1997.
Michael T. Brockbank, Corporation Counsel of Schenectady (Hugh H. Campbell, III, of counsel), for appellants.
Ben Wiles, Albany, for intervenor-appellant.
Higgins, Roberts, Beyerl & Coan, P. C., Schenectady (Michael E. Basile of counsel), for respondent.
Judges TITONE, BELLACOSA, SMITH, CIPARICK and WESLEY concur; Judge LEVINE taking no part.
*163 Chief Judge KAYE.
In Cornell University v Bagnardi (68 N.Y.2d 583), involving the application of local zoning regulations, we considered the correct balance to be struck when educational institutions seek expansion into a residential zone. Today we consider the novel, but related, question whether a municipality has acted lawfully in excluding educational institutions from a residential historic district. Like Supreme Court and the Appellate Division, we conclude that the City law denying educational institutions *164 the opportunity to apply for special use permits in a Single Family Historic District was unauthorized and therefore unconstitutional.
Respondent Union College is the owner of seven properties located in an area known as the General Electric Realty Plot in the City of Schenectady. The area was established in 1899 and developed as an "ideal residential section" to attract General Electric managers, scientists and others to Schenectady. Over the years, the Realty Plot matured into a distinctive, turn of the century residential neighborhood encompassing a nine block area adjacent to respondent's campus. Today, the Realty Plot is listed on the National Register of Historic Places.
In 1978, the City adopted Ordinance No. 78-45, which established an A-2 Single Family Historic District incorporating the Realty Plot. In an effort to preserve the historical sense of the area, the ordinance limited property uses to large, single-family residences. Educational, religious, philanthropic and eleemosynary institutions could, however, apply for special use permits within the Historic District.
The City amended its zoning provisions in 1984, adopting Schenectady City Code § 264-8, which limited permitted uses within the A-2 Historic District to single-family dwellings and for the first time restricted special permit uses to public utility facilities, substations and structures (City Code § 264-8 [C] [1]). Thus, all other special uses permitted from 1978 to 1984  including, most particularly, educational uses  were foreclosed. Before and after the amendment, the ordinance allowed a property owner who could show "practical difficulties" or "unnecessary hardships" to obtain a variance (City Code § 264-53 [B]). The Code also allowed a private party unable or unwilling to pursue a variance or special use permit to seek an amendment to the Code itself (City Code art XIV).
In November 1992, respondent proposed that City Code § 264-8 (C) be amended to include any nonresidential educational use as a special permit use within the District, but then confined its proposal to "faculty offices, administrative offices and homes for visiting dignitaries and guests of the College." Over the next two years, respondent pressed for the amendment. The City's Historic Districts Commission and the New York State Office of Parks, Recreation and Historic Preservation, however both projected that the proposed amendment would have a deleterious effect on the historic preservation values of the Realty Plot.
*165 In January 1995, Union College discontinued its pursuit of an amendment and instead commenced this declaratory judgment action against the City, its Mayor and the Schenectady City Council, seeking a declaration that City Code § 264-8 was unconstitutional on its face. Following joinder of issue, both sides moved for summary judgment. In comprehensive opinions, Supreme Court granted the College's motion and denied the cross motion, and the Appellate Division unanimously affirmed.

Discussion
The presumption of constitutionality enjoyed by a legislative enactment, such as the zoning ordinance at issue here, is formidable but not conclusive. With the police power as the predicate for the State's delegation of municipal zoning authority, a zoning ordinance will be struck down if it bears no substantial relation to the police power objective of promoting the public health, safety, morals or general welfare (Berenson v Town of New Castle, 38 N.Y.2d 102, 107, quoting Village of Euclid v Ambler Realty Co., 272 US 365, 395; Cornell Univ. v Bagnardi, 68 N.Y.2d 583, supra).
Unquestionably, municipalities can "enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city" (Penn Cent. Transp. Co. v New York City, 438 US 104, 129; see also, 2 Rathkopf, Zoning and Planning § 15.02 [4th ed 1996]). In support of City Code § 264-8, appellants point both to the Constitution's general grant of authority to adopt local laws (see, NY Const, art IX, § 2 [c]) and to the Legislature's specific grants of authority to localities to "manage the historical and cultural properties under their jurisdiction in a spirit of stewardship and trusteeship for future generations" (General Municipal Law, art 5-K ["Historic Preservation"], § 119-aa). Appellants underscore that, as a matter of public policy, "the historical, archeological, architectural and cultural heritage of the state is among the most important environmental assets of the state and that it should be preserved" (Parks, Recreation and Historic Preservation Law § 14.01).
The preservation of structures and areas with special historic, architectural or cultural significance is surely an important governmental objective. But the public interest in historical preservation does not as a matter of law override competing educational interests, which by their very nature also are "clearly in furtherance of the public morals and general *166 welfare" (Matter of Diocese of Rochester v Planning Bd., 1 N.Y.2d 508, 526).
As a consequence of their inherently beneficial nature, educational institutions have long "enjoyed special treatment with respect to residential zoning ordinances and have been permitted to expand into neighborhoods where nonconforming uses would otherwise not have been allowed" (Cornell Univ. v Bagnardi, 68 NY2d at 593; see also, Matter of Diocese of Rochester v Planning Bd., 1 N.Y.2d 508, supra; Matter of Concordia Coll. Inst. v Miller, 301 N.Y. 189). Indeed, we have held that as a general rule "the total exclusion of [educational] institutions from a residential district serves no end that is reasonably related to the morals, health, welfare and safety of the community * * * [and] is beyond the scope of the localities' zoning authority" (Cornell Univ. v Bagnardi, 68 NY2d at 594 [citations omitted]; see also, Matter of Diocese of Rochester v Planning Bd., 1 NY2d at 522).
The decision to restrict a proposed educational use can only be made after the intended use is evaluated against other legitimate interests, with primary consideration given to the overall impact on the public welfare. A municipality's pursuit of other legitimate objectives, such as historic preservation, does not diminish the importance of striking a balance between the important contribution made to society by educational institutions and the inimical consequences of their presence in residential neighborhoods. Thus, like traditional residential zoning ordinances, those designed to further an historic preservation purpose are not immune from the deliberative process that must precede the restriction of educational uses. Rather, proposed educational uses must be weighed against the interest in historical preservation, as well as other legitimate, competing interests, to determine how best to serve the public welfare.
Here, the issue is whether Union College may be denied the opportunity to submit its proposed educational use to the zoning board for such an evaluation. Although appellants argue that section 264-8 itself represents a deliberative balancing of interests, the ordinance merely reflects the City's sweeping policy decision that historical preservation interests will, in all cases, outweigh educational interests. In practical effect, the ordinance wholly excludes educational uses from the Historical District by improperly eliminating any opportunity for the balancing of individual educational uses against the public's historical preservation interests.
*167 The importance of evaluating proposed educational uses on a case-by-case basis is clearly illustrated here, where the City's conclusion that the presence of an educational use in the District will, in all instances, undermine the ordinance's purpose of promoting, maintaining and enhancing the historically significant buildings within the Realty Plot is completely unsupported. Plainly stated, depriving respondent of the opportunity to have its presumptively beneficial educational use weighed against competing interests, and thereby wholly excluding educational uses from the District, bears no substantial relation to the public health, safety, morals or general welfare, and is therefore beyond the City's zoning authority.
Appellants urge that, although educational uses are not included in the category of special permit uses allowed in the District, anyone seeking to use District property for an educational or other nonresidential purpose can apply for a variance or seek to amend the law. Neither the variance process  which requires a showing of practical difficulties or unnecessary hardships  nor the amendment process allows the zoning board to conduct the proper inquiry, which is to balance a particular applicant's educational use against the public interest in historical preservation.
As we noted in Cornell, a special permit application "affords zoning boards an opportunity to weigh the proposed use in relation to neighboring land uses and to cushion any adverse effects by the imposition of conditions designed to mitigate them" (Cornell Univ. v Planning Bd., 68 NY2d at 596). Indeed, if educational uses were included in the category of special permit uses allowed in Schenectady's Historical District, the reviewing body could determine the appropriateness of Union College's proposed use relative to the District's historical preservation goals by "weighing * * * the public need and benefit against the local impact and effect" (City Code, art XI, § 264-75 ["Special Permit Uses"]). The board could, if necessary, then impose reasonable conditions to mitigate any anticipated negative impacts on the historical character of the area  so long as those conditions do not operate indirectly to exclude the use altogether  thereby accommodating the public interest both in historical preservation and in education.
In failing to provide any means whereby Union College's proposed educational uses might be balanced against the public's interest in historical preservation, City Code § 264-8 serves no end that is substantially related to the promotion of the public health, safety, morals or general welfare, and as such is unconstitutional.
*168 Accordingly, the order of the Appellate Division should be affirmed, with costs.
Order affirmed, with costs.