*662 OPINION OF THE COURT
Thomas P. Phelan, J.
This is a declaratory judgment action tried without a jury principally to determine whether plaintiffs’ proposed use as a cemetery of its 97-acre parcel, bounded on the south by Jericho Turnpike, on the east by Hitchcock Lane, and on the west by Powell Lane, in the Incorporated Village of Old Westbury would constitute a religious use of property entitling plaintiffs to additional considerations and accommodations under defendants’ Zoning Code.*
Plaintiffs do not claim that cemetery use would be accessorial or ancillary to a place of worship but claim principal use as a place of public worship.
Testimony and Findings of Fact
[Plaintiffs presented extensive testimony that a Roman Catholic cemetery is a place of worship in its own right, having unique rituals and special significance in Roman Catholic theology.]
What Constitutes Religious Use?
It is well established in New York that as a matter of public policy religious uses of land are presumptively beneficial to the public (Matter of Diocese of Rochester v Planning Bd., 1 NY2d 508, 526; Cornell Univ. v Bagnardi, 68 NY2d 583, 593). As zoning regulations are a means of enhancing the public health, safety and welfare, proposed religious uses are to be accommodated unless the presumption is rebutted by a showing that the proposed use would have an actual negative impact on the public health, safety and welfare sufficient to support restriction on the breadth and scope of the proposed religious use (Cornell Univ. v Bagnardi, supra, at 589; Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor, 38 NY2d 283, 292 [Breitel, Ch. J., concurring]).
So strong is the presumption of public benefit that ordinarily such factors bearing on public health, safety and welfare as neighborhood appearances, adverse effect on property values, loss of tax revenue, decreased enjoyment of neighboring properties and traffic hazards are insufficient to rebut the presumption (Matter of Diocese of Rochester v Planning Bd., supra).
*663 These factors are germane only to the sculpting of reasonable restrictions in order to avoid or minimize negative impact to the health, safety and welfare of the community (Matter of Westchester Reform Temple v Brown, 22 NY2d 488, 496-497; Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor, supra).
The more specific question posed by the Appellate Division of the Supreme Court, Second Department, in this case remains “whether the plaintiffs’ proposed use of the subject premises as a cemetery would constitute a religious use entitling the plaintiffs to additional consideration and accommodation” (McGann v Incorporated Vil. of Old Westbury, 256 AD2d 556, 557 [1998]).
On this precise question the appellate landscape is nearly barren. There is no New York authority directly on point. As noted by one commentator, cases tend to be fact specific and a national review reveals at least four distinct general approaches to the issue of determining religious use (Goldberg, Gimme Shelter: Religious Provision of Shelter to the Homeless as a Protected Use under Zoning Laws, 30 Wash U J Urb & Contemp L 75, 90 [1986]).
Texas is identified as having the most restrictive approach, narrowly construing religious use to involve traditional concepts of church use of property and not nontraditional prayer healing activities (Goldberg, op. cit., at 90-91; Berry, Judicial Definition of Religious Use in Zoning Cases, 1973 Urb L Ann 291, 294).
Pennsylvania’s approach is described as looking to the purpose of the zoning ordinance (Berry, op. cit., at 295-296) and the purpose of the intended use (Goldberg, op. cit., at 91-92) without regard to the owner’s status as a religious entity. Adopting such an approach, the Russian Orthodox Church’s proposed establishment of a cemetery was characterized by the Pennsylvania Supreme Court as “basically a secular use of land and a use which is not incidental to or in support of the primary uses permitted in the [subject] [district, namely, residential and agricultural.” (Matter of Russian Orthodox Church of Holy Ghost, 397 Pa 126, 129, 152 A2d 489, 491.)
A third approach is described as focusing on the type of structures involved such as traditional churches, not tents or residential dwellings (Goldberg, op. cit., at 92).
A hybrid approach utilizing a balancing test to determine if an intended accessorial or ancillary use is an integral part of a *664 faith or its functioning is illustrated, by cases in Idaho, Indiana, Iowa, New Hampshire and Washington (Goldberg, op. cit., at 93).
The fourth and final approach is described as “[t]he most inclusive view of religious uses * * * best exemplified by the approach taken by New York courts, which broadly view religious use as ‘conduct with religious purpose’ [Slevin v Long Is. Jewish Med. Ctr., 66 Misc 2d 312]” (Goldberg, op. cit., at 93).
Accepting, as this court does, the existence of multiple, distinct approaches to determining religious use, defendants’ citation to and reliance upon Pennsylvania case law to argue that plaintiffs’ proposed cemetery does not constitute a religious use because it is basically secular use of land would be error in New York.
While, as correctly maintained by defendants, New York courts must focus on the use of the land, not the identity of the owner (see, Matter of St. Onge v Donovan, 71 NY2d 507, 517; Matter of Dexter v Town Bd., 36 NY2d 102, 105), similarities with secular, commercial or other uses are overridden if the proposed use by a religious entity simultaneously strengthens and furthers the religion itself (see, Matter of Community Synagogue v Bates, 1 NY2d 445, 453; cf., Matter of Yeshiva & Mesivta Toras Chaim v Rose, 136 AD2d 710).
The seminal New York case establishing this State’s inclusive approach is Matter of Community Synagogue v Bates (supra, at 453 [1956]) wherein the Court of Appeals determined that operation of the proposed synagogue for strictly religious uses includes not only worship, but also promotion of religious teachings:
“A church is more than merely an edifice affording people the opportunity to worship God. Strictly religious uses and activities are more than prayer and sacrifice and all churches recognize that the area of their responsibility is broader than leading the congregation in prayer.”
There followed a long line of cases in New York, and elsewhere, most ably recounted in Slevin v Long Is. Jewish Med. Ctr. (supra). In Slevin the court determined that for zoning purposes the term religious use should be defined as conduct with a religious purpose. The court further found that religious purpose should be broadly interpreted to acknowledge the role of religion not only in leading prayer or worship services but also in teaching religion and morality by bringing *665 youngsters to maturity as healthy, responsible, contributing members of society. As p consequence, the church’s proposed drug counseling program for teenage youth regardless of church affiliation, which relied in part on paid health professionals, constituted a religious use entitled to accommodation if at all possible.
This court need not and hence does not adopt a definition or-interpretation of religious use of the breadth and scope found in Slevin (supra). Rather, the credible testimony and evidence presented on behalf of plaintiffs makes it clear that plaintiffs’ proposed use of the subject parcel as a cemetery is firmly grounded in and consistent with the doctrines, practices, teachings and ecclesiastical law of the Roman Catholic Church such that it may reasonably be considered conduct for a religious purpose.
Further, this court is convinced by the evidence presented that to hold differently would diminish and impair the right and ability of this individual plaintiff and religious entity to practice their faith and religion.
Defendants’ contention that there exists no real need for another Catholic cemetery or that other sites outside defendant Village are better suited for use as a cemetery is irrelevant to a determination of religious use.
If a zoning authority can determine how many places for religious purposes are appropriate for a particular venue, is that not an invitation to violate both the Free Exercise and Establishment Clauses of the Federal and State Constitutions (see, Matter of Diocese of Rochester v Planning Bd., 1 NY2d 508, supra)?
In Cornell Univ. v Bagnardi (68 NY2d 583, supra), the Court of Appeals reaffirmed the presumption that a religious use is always in furtherance of the public health, safety and morals but in so doing essentially adopted the concurring opinion of then Chief Judge Breitel in Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor (38 NY2d 283, supra), that the presumption is not absolute and conclusive but may be rebutted by a showing of an actual negative impact upon the community. In so doing, the Court specifically rejected defendants’ attempt to broaden the criteria used to prohibit a proposed religious use to include a requirement that the church demonstrate some need for its proposal. Church or institutional need is unrelated to the issue of public health, safety and welfare. The imposition of such a requirement is beyond the municipality’s police power and thereby the municipality’s zoning authority (Cornell Univ. v Bagnardi, supra, at 597).
*666 Similarly, the issue of community need is unrelated to the intended use to which the property will be put. Hence, defendants’ attempt to broaden the definition of religious use to include community need as a relevant criteria is rejected.
Also rejected, although not on grounds of relevance, is defendants’ attempt to inject the financial aspects of the •proposed cemetery as a relevant factor in the definition of religious use.
That the potential income to be derived from operation of the proposed cemetery may exceed its costs fails to anticipate any potential reasonable restrictions inferred by the Bagnardi Court and does not diminish the overwhelming testimony of plaintiffs’ witnesses attesting to the central spiritual role of a Roman Catholic cemetery to its religious followers.
The fact that in the past excess money not needed for cemetery purposes was denominated an “annual dividend” and transferred to the Bishop of the Diocese does not lessen the religious use of the property. The annual dividend which may result if revenue exceeds expenditures merely enables plaintiffs to further the purposes for which plaintiff Diocese was incorporated as a religious entity by act of the New York State Legislature. The argued analogy to a commercial venture is thereby greatly attenuated.
Conclusion
In accordance with this court’s findings and determinations hereinabove, plaintiffs are awarded judgment to the extent that their proposed cemetery is found to constitute a religious use.
Having so found, defendants’ denial of plaintiffs’ application for a special use permit is annulled. The matter is remitted to the Board of Trustees of the Incorporated Village of Old West-bury for issuance of said permit consistent herewith (see, Matter of Genesis Assembly of God v Davies, 208 AD2d 627).
As stated by the Appellate Division, Second Department, in this action, “[I]f the proposed use is found to be a religious use, it is then incumbent upon the defendants ‘to suggest measures to accommodate the proposed religious use while [mitigating] the adverse effects on the surrounding community to the greatest extent possible’ ” (McGann v Incorporated Vil. of Old Westbury, 256 AD2d, supra, at 557 [1998], quoting Matter of Genesis Assembly of God v Davies, supra, at 628).
[Portions of opinion omitted for purposes of publication.]

 This decision has been edited for publication. An unedited copy of this decision was published in the New York Law Journal on November 20, 2000 (at 37, col 5 [QDS No. 72703506]).