■ In the Matter of CORPORATION OF PRESIDING BISHOP OF CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS et al., Respondents, v ZONING BOARD OF APPEALS OF TOWN/VILLAGE OF HARRISON, Appellant. [745 NYS2d 76] —In a proceeding pursuant to CPLR article 78 to review so much of a determination of the Zoning Board of Appeals of the Town/Village of Harrison, dated September 28, 2000, as denied the petitioners' application for a height area variance, the appeal is from a judgment of the Supreme Court, Westchester County (Leavitt, J.), entered March 9, 2001, which granted the petition and directed the issuance of the variance.

Ordered that the judgment is affirmed, with costs.

The Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints and the Church of Jesus Christ of Latter-Day Saints (hereinafter collectively referred to

as the Church of Jesus Christ) were granted a special-use permit by the Planning Board of the Town/Village of Harrison to construct a Mormon temple in a residential zoning district. The design approved by the Planning Board after environmental review pursuant to the State Environmental Quality and Review Act (hereinafter SEQRA) required that a height variance be obtained because the proposed structure would extend 23 feet above the permitted 30-foot limit. Accordingly, the Church of Jesus Christ applied to the Zoning Board of Appeals of the Town/Village of Harrison (hereinafter the ZBA) for such a variance. After public hearings and the submission of evidence, the ZBA denied the variance. The Church of Jesus Christ commenced this proceeding pursuant to CPLR article 78 to review the ZBA's determination and to compel the issuance of the requested height variance. In the judgment appealed from, the Supreme Court granted such relief. We affirm.

Town Law § 267-b (3) (b) provides that, in determining whether to grant or deny an application for an area variance: "the zoning board of appeals shall take into consideration the benefit to the applicant if the variance is granted, as weighed against the detriment to the health, safety and welfare of the neighborhood or community by such grant. In making such a determination the board shall also consider: (1) whether an undesirable change will be produced in the character of the neighborhood or a detriment to nearby properties will be created by the granting of the area variance; (2) whether the benefit sought by the applicant can be achieved by some method, feasible for the applicant to pursue, other than an area variance; (3) whether the requested area variance is substantial; (4) whether the proposed variance will have an adverse effect or impact on the physical or environmental condition in the neighborhood or district; and (5) whether the alleged difficulty was self-created, which consideration shall be relevant to the decision of the board of appeals, but shall not necessarily preclude the granting of the area variance." (*See Matter of Sasso v Osgood,* 86 NY2d 374, 384.) Here, the ZBA determined that, weighing the relevant considerations, the denial of the requested variance was warranted because (1) the variance was substantial, representing a 77% increase over the permitted height, (2) there existed a feasible alternative to pursue other than an area variance, i.e., the construction of an alternative temple design, and (3) the grant of the requested variance would have a "significant negative visual impact on the surrounding residential area" because all or parts of the temple would be visible from various surrounding properties. However, although the variance requested was substantial, the record

does not contain substantial evidence supporting the ZBA's determination. First, the alternative design for the temple proposed by the ZBA still required the grant of a height variance, which is a departure from the requirement of Town Law § 267-b (3) (b). Second, not only was the proposed alternative design not approved by the Planning Board, it is a profound departure from the design that was approved (*see* Town Law § 274-a). Third, construction of the proposed design would, at the least, increase the cost of the project by $1 to $2 million, and would require the removal of up to 16 mature trees that screen the property. Similarly, the conclusion that the grant of the proposed variance would have a significant negative visual impact on the surrounding residential area was not only contradicted by the ZBA's own expert, but also, was based on conclusions drawn from viewing a photographic simulation of a proposed temple design that was not the design approved by the Planning Board. Finally, although religious institutions are not exempt from zoning laws, greater flexibility is required in evaluating applications for religious use, and every effort to accommodate such use must be made (*see, Cornell Univ. v Bagnardi,* 68 NY2d 583; *Matter of Young Israel of N. Woodmere v Town of Hempstead Bd. of Zoning Appeals,* 221 AD2d 646; *Matter of Islamic Socy. of Westchester & Rockland v Foley,* 96 AD2d 536, 537). In sum, the ZBA's determination that the benefit from the grant of the requested variance would be outweighed by the detriment to the health, safety, and welfare of the neighborhood or community was not rational and must be annulled (*see Matter of Sasso v Osgood,* 86 NY2d 374; *Matter of Easy Home Program v Trotta,* 276 AD2d 553; *Matter of Owens v Zoning Bd. of Appeals of Town of Islip,* 255 AD2d 587; *Matter of Necker Pottick, Fox Run Woods Bldrs. Corp. v Duncan,* 251 AD2d 333).

Contrary to the ZBA's argument on appeal, the mandate of Town Law § 267-b (3) (c) that the ZBA "grant the minimum variance that it shall deem necessary and adequate and at the same time preserve and protect the character of the neighborhood and the health, safety and welfare of the community" does not relieve it from engaging in the balancing test mandated by Town Law § 267-b (3) (b) for considering a requested variance. Ritter, J.P., Goldstein, Luciano and Schmidt, JJ., concur.