■ In the Matter of CORNELL UNIVERSITY, Respondent, v DAVID BEER et al., Constituting the Ithaca Landmarks Preservation Commission of the City of Ithaca, New York, et al., Appellants. [791 NYS2d 682]—

Rose, J. Appeal from a judgment of the Supreme Court (Mulvey, J.), entered June 9, 2004 in Tompkins County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of the Ithaca Landmarks Preservation Commission denying petitioner's application for a certificate of appropriateness.

In 2001, petitioner applied to the Planning Board of the City of Ithaca for site plan approval of a project to renovate a residential portion of its campus. Petitioner's plans involved, among other things, replacement of some existing residence halls with new "college houses" and other facilities, elimination of an existing 195-space parking lot to provide space for the new construction and creation of a 176-space parking lot nearby as a replacement. The Planning Board approved the proposed buildings, but denied approval of the parking lot. In July 2003, while petitioner's judicial challenge to that denial was pending, the Ithaca Landmarks Preservation Commission (hereinafter ILPC) designated a new historic district encompassing the area of campus in which the new parking lot was to be located.

This historic district consists of approximately 10 acres of land that has been owned by petitioner for the past 50 years and is zoned exclusively for educational use. It was the site of the former Treman family estate, and arranged in a semicircle on the site are three buildings, two of which are former Treman family residences dating back to the early 1900s. The third building is a modern replacement of an original Treman residence that has not survived. West of these buildings are a shared lawn and other surviving features—such as a carriage driveway, wall and terrace—of the original landscaping, which was designed by landscape architect Warren Manning in 1901-1902. The western portion of the landscape, which descends downhill from the terrace to a public street, consists of lawn and an area adjacent to the street that was also lawn originally, but has been long neglected and overgrown by invasive trees and brush. It was within this overgrown thicket of trees and brush, furthest from the historic Treman residences and 325 feet from the area of new construction, that petitioner proposed to place its parking lot.

When it ultimately succeeded in its judicial challenge to the Planning Board's denial of site plan approval for the parking lot, petitioner was then required to apply to ILPC for a certificate of appropriateness permitting placement of the lot within

the new historic district. ILPC denied the application, and petitioner then commenced this CPLR article 78 proceeding to annul the denial on the grounds that it lacked a rational basis and effectively deprived petitioner of any use of the subject area. Supreme Court granted the petition, respondents appeal and we affirm.

In assessing whether the denial of petitioner's application met the rational basis standard (see CPLR 7803 [3]; *Matter of Teachers Ins. & Annuity Assn. of Am. v City of New York*, 82 NY2d 35, 41 [1993]; *Lutheran Church in Am. v City of New York*, 35 NY2d 121, 128 n 2 [1974]; *Matter of Kessman v Ulster County Dept. of Social Servs.*, 258 AD2d 867, 868 [1999]), we note that there are two additional constraints upon the exercise of ILPC's discretion. First, under the review guidelines provided in the Ithaca City Code, proposed improvements within an historic district are approvable where the alteration or destruction of the architectural features of the site "will not have a *substantial adverse effect* on the aesthetic, historical or architectural significance and value of . . . the landmark" (Ithaca City Code § 228-4 [E] [1] [a] [emphasis added]). The second constraint is ILPC's obligation to strike an appropriate balance between the public interests in historical preservation and in educational uses, "which by their very nature also are 'clearly in furtherance of the public morals and general welfare' " (*Trustees of Union Coll. in Town of Schenectady in State of N.Y. v Members of Schenectady City Council*, 91 NY2d 161, 165-166 [1997], quoting *Matter of Diocese of Rochester v Planning Bd. of Town of Brighton*, 1 NY2d 508, 526 [1956]). ILPC must, on a case-by-case basis, balance these competing public interests and attempt to cushion any adverse effect of an educational use upon an historic site by the imposition of reasonable conditions designed to mitigate them, thereby accommodating both public interests (see *Trustees of Union Coll. in Town of Schenectady in State of N.Y. v Members of Schenectady City Council, supra* at 167).

With these limitations on the exercise of its discretion in mind, we turn to the findings made by ILPC in denying petitioner's application. After reciting the historic value of the surviving elements of the designed landscaping within the former Treman estate, ILPC concluded with three explicit findings concerning petitioner's proposed parking lot. Citing no factual support, ILPC found that the size and scale of the lot would, first, adversely affect the "landscape's physical and visual character" and, second, impair the historic context and setting for the two remaining Treman houses. Third, it found that the

type of evergreen trees to be planted to screen the parking lot from view would impair panoramic views to the west from within the former estate.

In an effort to find the factual support for ILPC's conclusions, we have reviewed the testimony and documents addressing the potential impacts of the proposed parking lot. We discern evidence, however, of only a minimal effect upon the Treman landscape as it currently exists. Since the area to be used for the parking lot was originally part of the rolling west lawn of the estate and was maintained as lawn into the 1930s, keeping the existing thicket of trees and brush unchanged does not preserve the original landscape. And yet, the experts who spoke against the parking lot strongly opined that replacement of a portion of the overgrown wooded area with a parking lot or any other manmade edifice would be inconsistent with, and, therefore, destroy the integrity of the original design.

Despite this opinion, the record evidence shows that the proposed parking lot will have little, if any, impact on the surviving, original landscape features. The undisputed evidence before ILPC established that the parking lot would be located wholly within the wooded portion of the historic district and that, as a result of existing and proposed vegetation and site contouring, the lot would not be visible from public vantage points and minimally visible from within the former estate. In addition, the lot would be positioned away from what both petitioner's and respondents' experts identified as the former estate's significant historic elements: the two remaining Treman houses, carriage driveway, terrace, wall, shared lawn and several remaining specimen trees. The parking lot design retains 85% of the existing lawn and the project involves restoration of a carriage driveway, which has fallen into disrepair. Thus, we find in the record no rational basis for ILPC's first two findings.

We also agree with Supreme Court's determination that ILPC's third finding lacks a rational basis because the original panoramic view, which allegedly would be impaired by the new plantings to screen the parking lot, has not existed for many years. Rather, the record indicates that the work to be done in the wooded area would actually open up vistas that are now obstructed. Ironically, we note that the new plantings were included to meet requirements imposed by the Planning Board.

As a result, Supreme Court correctly concluded that none of ILPC's findings has a rational basis in the record and the adverse effects noted cannot reasonably be viewed as substantial. The record also strongly suggests that it is the very nature of a parking lot, rather than the size or scale of this parking lot,

that respondents' experts found objectionable and led to rejection of petitioner's application. Moreover, given the undisputed minimal visual impact of this parking lot, there is no evidence that it would cause the loss of any of the remaining historic elements of the landscape or reduce their historic and architectural significance.

Next, in rejecting ILPC's claim that it adequately weighed the public interest in preserving the integrity of the landscape design against the public interest in the educational uses proposed by petitioner, we note that individual ILPC members expressed the disingenuous opinion that the parking lot is not a valid educational use and that, even if it were, petitioner had stated no rationale for placing it within the historic district. Our review of the record discloses ample evidence that petitioner's proposed renovations, including the replacement parking lot, constitute valuable educational uses. Colleges and universities are generally permitted to locate facilities for accessory uses on their properties that are reasonably related to their educational purposes (*see Town of Islip v Dowling Coll.*, 275 AD2d 366, 367 [2000]). Here, the parking lot is a qualified accessory use to the student residences and instructional facilities to be constructed as part of petitioner's renovation of its campus (*see Matter of Diocese of Rochester v Planning Bd. of Town of Brighton*, 1 NY2d 508, 525-526 [1956], *supra*). Further, since petitioner was not required to demonstrate a special need for the parking lot (*see Cornell Univ. v Bagnardi*, 68 NY2d 583, 597 [1986]), respondents lacked the power to find that the need for the lot at the planned campus location was not proven to their satisfaction (*see id.* at 596-597; *Matter of Lawrence School Corp. v Lewis*, 174 AD2d 42, 46-47 [1992]).

When the parking lot is viewed as an educational use and the need for it is presumed, it is plain that respondents failed to engage in a deliberative process balancing the public interest in that use against the public interest in keeping the existing wooded area unchanged. ILPC made no findings that some other placement of the lot on petitioner's land would be practical, would have less impact on historic sites and would meet petitioner's needs. There is no indication that ILPC considered what conditions could reasonably be imposed to mitigate the perceived adverse impacts on the landscape. ILPC also made no attempt to assess the comparative values to the public of the proposed use and the loss of a portion of the wooded area. Instead, respondents presumed that even an unobtrusive change would be unacceptable to the public because it would interfere with the integrity of the overall landscape design. Since there is

no basis in the record for such a presumption, we find no error in Supreme Court's conclusion that ILPC's determination was arbitrary and capricious.

Mercure, J.P., Crew III, Carpinello and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.