[838 NE2d 624, 804 NYS2d 708]

In the Matter of Pine Knolls Alliance Church, Respondent, v Zoning Board of Appeals of the Town of Moreau, Appellant.

Argued September 15, 2005; decided October 20, 2005

**POINTS OF COUNSEL**

*Bartlett, Pontiff, Stewart & Rhodes, P.C.*, Glens Falls (*Martin D. Auffredou* and *Elisabeth B. Mahoney* of counsel), for appellant. I. The Appellate Division improperly applied this Court's holding in *Cornell Univ. v Bagnardi* (68 NY2d 583 [1986]) to the present case. (*Trustees of Union Coll. in Town of Schenectady in State of N.Y. v Members of Schenectady City Council,* 91 NY2d 161; *McGann v Incorporated Vil. of Old Westbury,* 293 AD2d 581; *Matter of Apostolic Holiness Church v Zoning Bd. of Appeals of Town of Babylon,* 220 AD2d 740; *Matter of Diocese of Rochester v Planning Bd. of Town of Brighton,* 1 NY2d 508; *Matter of Assembly of God Church of Bay Shore, N.Y. v Islip Town Bd.,* 228 AD2d 585; *Matter of Holy Trinity Greek Orthodox Church of Hicksville v Casey,* 150 AD2d 448.) II. The Appellate Division improperly directed respondent to issue a permit to petitioner and, instead, should have remitted the application to respondent for reconsideration. (*Cornell Univ. v Bagnardi,* 68 NY2d 583; *McGann v Incorporated Vil. of Old Westbury,* 293 AD2d 581; *Neddermeyer v Town of Ontario Planning Bd.,* 155 AD2d 908.) III. Respondent's determination was supported by substantial evidence. (*Matter of Fuhst v Foley,* 45 NY2d 441; *Matter of Cowan v Kern,* 41 NY2d 591; *Conley v Town of Brookhaven Zoning Bd. of Appeals,* 40 NY2d 309; *Matter of Diocese of Rochester v Planning Bd. of Town of Brighton,* 1 NY2d 508; *Matter of PDH Props. v Planning Bd. of Town of Milton,* 298 AD2d 684; *Matter of Albany-Greene Sanitation v Town of New Baltimore Zoning Bd. of Appeals,* 263 AD2d 644; *Matter of Squire v Conway,* 256 AD2d 771; *Matter of Eddy v Niefer,* 297 AD2d 410.)

*FitzGerald Morris Baker Firth P.C.*, Glens Falls (*William A. Scott* of counsel), for respondent. I. The question of whether substantial evidence was presented to support the Zoning Board of Appeals of the Town of Moreau's decision is not at issue on

this appeal. (*Matter of Harrison Orthodox Minyan v Town Bd. of Harrison,* 159 AD2d 572; *Neddermeyer v Town of Ontario Planning Bd.,* 155 AD2d 908.) II. The Appellate Division's ruling is consistent with the prior rulings of this Court. (*Cornell Univ. v Bagnardi,* 68 NY2d 583; *Trustees of Union Coll. in Town of Schenectady in State of N.Y. v Members of Schenectady City Council,* 91 NY2d 161; *Matter of Cornell Univ. v Beer,* 16 AD3d 890; *Matter of Holy Trinity Greek Orthodox Church of Hicksville v Casey,* 150 AD2d 448; *Matter of Assembly of God Church of Bay Shore, N.Y. v Islip Town Bd.,* 228 AD2d 585.) III. The relief afforded by the Appellate Division was appropriate. (*Matter of Sarah Lawrence Coll. v Zoning Bd. of Appeals in City of Yonkers,* 119 AD2d 753; *Cornell Univ. v Bagnardi,* 107 AD2d 398, 68 NY2d 583; *Neddermeyer v Town of Ontario Planning Bd.,* 155 AD2d 908.)

**OPINION OF THE COURT**

GRAFFEO, J.

In *Cornell Univ. v Bagnardi* (68 NY2d 583, 589 [1986]), our task was to determine how best to balance the needs and rights of educational and religious institutions seeking to expand their facilities in residential neighborhoods against the concerns of local residents who might be harmed or inconvenienced by the proposed construction projects. We approved the special permit application process as an effective means of addressing expansion requests but we annulled the two zoning determinations under review because the zoning officials in both cases had impermissibly required the colleges that sought special permits to prove their need to expand. In this case, we are asked to apply our decision in *Cornell University* to a controversy between a church and a zoning board of appeals.

I.

Since 1974, petitioner Pine Knolls Alliance Church has operated a place of worship on a 5.78 acre parcel of property in a residential district on Route 32 in the Town of Moreau, Saratoga County, pursuant to a special use permit issued by the Town. After purchasing an adjoining 14.3 acres, the Church applied to respondent Zoning Board of Appeals (ZBA) in November 2002 for a modification of its existing special use permit to implement an expansion plan. The Church proposed the construction of a 9,970 square foot addition to its 10,075 square foot main church, a 2,120 square foot addition to its 6,040 square foot youth building, a new 3,780 square foot building for

use as a counseling center, relocation and expansion of the playground, relocation of an existing storage shed and trailer, and expansion of the parking lot.

As a final aspect of the plan, although a driveway already connected the parking lot to Route 32, the Church sought to build a second access road about 500 feet to the north of the existing driveway that would assist the flow of traffic between the parking lot and Route 32. The new roadway would be aligned opposite a residential cross street, creating a four-way intersection on Route 32.

The ZBA referred the entire expansion application to the Town Planning Board for a report and recommendation. At the request of the Planning Board, the Church hired Creighton Manning Engineering, LLP to conduct a traffic study. The engineering report concluded that the proposed expansion, including the addition of a new access road, would have no significant impact on traffic in the surrounding neighborhood and that no mitigation was necessary at the affected intersection. Based on the report, the Planning Board issued a "positive recommendation" concerning the project, but suggested that plantings be placed to shield neighboring properties from the effects of the expansion.

In the meantime, neighborhood residents retained professional engineer Lawrence M. Levine to conduct a traffic analysis. Levine determined that the proposed secondary access road would create traffic problems both for churchgoers and for nearby residents. Levine cited the potential for increased cut-through traffic that would disrupt the residential neighborhood across from the church property, turning conflicts that could result in accidents at the new four-way intersection and sight-line problems for vehicles exiting the Church. He further opined that construction of the additional driveway would lead to noise and light pollution and create runoff problems for adjoining residential properties. Although he recognized that the entire expansion plan would result in increased church-related traffic, Levine nonetheless concluded that it was not necessary for the Church to construct a second access road. Instead, Levine commented that parking lot congestion could be alleviated by widening the existing driveway to create two lanes (with one dedicated as a left-turning exit lane after services) and applying "[s]imple traffic management techniques" to control overlapping arrivals and departures.

In March 2003, the ZBA referred the Church's development proposal to the Saratoga County Planning Board. Like its town counterpart, the County Planning Board generally recommended that the expansion plan be approved, but it expressed reservations about the secondary driveway. It urged the ZBA to examine alternatives that would lessen the impact of the new roadway on neighboring properties, including withholding approval of the access road until all other reasonable traffic control measures were instituted by the applicant. In particular, the County Planning Board suggested that the ZBA consider requiring the Church to widen its existing driveway, eliminate parking adjacent to the existing intersection, employ a traffic control officer during peak usage hours or take other actions to ease traffic congestion.

After conducting a public hearing, the ZBA issued a determination in August 2003 approving every aspect of the development plan except the Church's request to construct the second driveway. Apart from the additional roadway, the ZBA concluded that the project would not result in significant adverse impacts to the public welfare. Crediting the findings in the Levine engineering report, however, the ZBA found that the secondary roadway would "present undue and inconvenient impacts to the public welfare including noise and traffic upon the neighboring properties" and would affect "green space" to the extent that these negative impacts "outweigh any perceived benefit to the Church at this time." The ZBA noted that the new driveway was unnecessary because the Church's traffic needs could be met through minor upgrades to the existing entrance road, such as the removal of a planter, widening the existing driveway to establish two exit lanes and eliminating parking along the exit lanes. The denial of the additional driveway was made without prejudice to the Church renewing its application or submitting a new application at a later time should the recommended measures prove ineffective.

The Church then commenced this CPLR article 78 proceeding challenging that portion of the ZBA determination that denied permission to construct the secondary roadway. The Church argued that the ZBA had impermissibly imposed a requirement that the Church establish a "need" for the access road contrary to this Court's decision in *Cornell University* and the determination was therefore arbitrary and capricious. Supreme Court dismissed the petition, finding that the denial of the secondary driveway was supported by the negative impact evidence in the

record and the ZBA had not impermissibly interfered with the Church's religious activities when it disapproved construction of the new driveway. To the contrary, Supreme Court viewed the denial as a permissible condition to the ZBA's grant of a modified special use permit.

On appeal, the Appellate Division reversed, granting the petition and directing the issuance of a special use permit authorizing the second driveway. Opining that the "underlying reason" for the ZBA's denial was the Church's failure to establish that it needed an additional access road and interpreting our decision in *Cornell University* as precluding any consideration of the Church's needs, the Court concluded that the determination was fatally flawed (14 AD3d 863, 864 [2005]). We granted the ZBA permission to appeal to this Court and we now reverse and reinstate the order of Supreme Court confirming the ZBA determination.

## II.

"Historically, schools and churches have enjoyed special treatment with respect to residential zoning ordinances and have been permitted to expand into neighborhoods where nonconforming uses would otherwise not have been allowed" (*Cornell Univ. v Bagnardi*, 68 NY2d at 593). Recognizing that educational and religious institutions are presumed to have a beneficial effect on the community, we clarified in *Cornell University* that this presumption can be rebutted "with evidence of a significant impact on traffic congestion, property values, municipal services and the like" (*id.* at 595). We have invalidated ordinances that impose blanket bans on religious or educational uses in particular communities in favor of a case-by-case review, endorsing the special use permit application process as the proper procedure for addressing expansion requests (*see Trustees of Union Coll. in Town of Schenectady in State of N.Y. v Members of Schenectady City Council*, 91 NY2d 161 [1997]). This procedure "affords zoning boards an opportunity to weigh the proposed use in relation to neighboring land uses and to cushion any adverse effects by the imposition of conditions designed to mitigate them" (*Cornell Univ.*, 68 NY2d at 596 [citation omitted]).

After engaging in the appropriate balancing process, zoning officials may conclude that "a particular educational or religious use may actually detract from the public's health, safety, welfare or morals" (*id.* at 595) and may deny a special use permit on

that basis. When the negative impacts are not so extreme as to warrant outright denial, mitigating conditions may be imposed to ameliorate the harm "provided they do not, by their cost, magnitude or volume, operate indirectly to exclude such uses altogether" (*id.* at 596 [citation omitted]). In assessing a special permit application, zoning officials are to review the effect of the proposed expansion on the public's health, safety, welfare or morals, concerns grounded in the exercise of police power, "with primary consideration given to the over-all impact on the public welfare" (*Trustees of Union Coll.*, 91 NY2d at 166). Applications may not be denied based on considerations irrelevant to these concerns.

Thus, in *Cornell University*, we struck down two zoning decisions involving colleges because zoning officials in both cases had required that the educational institutions seeking special permits prove their need to expand as a condition precedent to granting the application—an improper criterion. We reasoned that "[a] requirement of a showing of need to expand . . . , or even more stringently, a need to expand to the particular location chosen . . . , has no bearing whatsoever upon the public's health, safety, welfare or morals" and, as such, was impermissible (*Cornell Univ.*, 68 NY2d at 597 [citations omitted]). We made clear in *Cornell University* that it is not the role of zoning officials to second-guess the expansion needs of religious and educational institutions. That being said, however, once those institutions have identified their own needs and presented those interests in a special permit application, zoning officials have the flexibility to consider other means of accommodating those needs if the negative impacts of the proposed use outweigh its beneficial effects.

Unlike in *Cornell University*, the ZBA in this case did not require the Church to make an affirmative showing of a need to expand as a condition precedent to the issuance of a special use permit. Indeed, there was no discussion in the ZBA determination concerning whether the Church needed its comprehensive expansion plan, which included significant additions to existing structures, the erection of a new building, and the relocation and expansion of other facilities. Rather, the inquiry was whether the proposed expansion could be accomplished in a manner that mitigated the negative impacts on the surrounding community. Based on record evidence, the ZBA found that it could and granted all aspects of the application except for the secondary roadway.

Although the Church was denied permission to construct a new access road, this was not a denial of permission to expand. The ZBA acknowledged that the expansion project could result in internal traffic concerns, but found that the Church could address those concerns in ways other than as proposed. Instead of constructing a new roadway off Route 32, the Church was allowed to increase the capacity of its existing driveway. This was the functional equivalent of imposing mitigating conditions on the grant of an application—a practice expressly approved in *Cornell University* as long as such conditions do not "by their cost, magnitude or volume, operate indirectly to exclude" the religious or educational use of the parcel. The requirement that petitioner widen its existing driveway (in lieu of constructing a new one) is neither so costly or extreme that it undermines the efficacy of the expansion plan, nor does it prohibit the Church's religious use of the newly acquired parcel. It therefore meets the test articulated in *Cornell University*.

The Church argues that the ZBA's reference to the need for the secondary driveway is indistinguishable from the "need to expand" analysis disapproved in *Cornell University*. We disagree. The ZBA never required the Church to prove a need to expand, either in general terms or in relation to the adjoining property the Church had purchased for that purpose. Instead, it determined that there was a means for the Church to address the congregation's traffic concerns (which the Church itself had recognized) without construction of a secondary roadway that would have significant negative impacts on the surrounding residential community. It was only in this sense that the ZBA noted that the Church did not "need" the additional access road. Read in context, the discussion of need did not involve an impermissible interference with the internal affairs of the Church but arose out of an appropriate balancing of interests well within the scope of the powers of a ZBA.

In sum, in this case the ZBA found that the expansion could be accomplished in a manner that was less intrusive to neighboring properties. This determination is supported by substantial evidence in the record, particularly the findings in the Levine traffic study and the Saratoga County Planning Board recommendation. Because there was nothing improper, irrational, arbitrary or capricious about the ZBA's analysis or the conclu-

sion it reached, the determination should not have been disturbed.*

Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, READ and R.S. SMITH concur.

Order reversed, etc.

---

* As a result of our decision upholding the ZBA determination, we have no occasion to address the ZBA's additional contention that, even if the determination had been erroneous, the Appellate Division erred in granting the petition instead of remitting the matter to the ZBA for further proceedings.