■ ALBANY PREPARATORY CHARTER SCHOOL et al., Respondents, v CITY OF ALBANY et al., Appellants. [818 NYS2d 651]—

Mugglin, J. Appeal from a judgment of the Supreme Court (Spargo, J.), entered November 30, 2005 in Albany County, which, inter alia, granted petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to annul a determination of respondent City of Albany Board of Zoning Appeals denying petitioners' request for a use variance, area variances and a parking lot permit to construct and operate a charter school.

Petitioners' property at 30 Watervliet Avenue in the City of Albany was, for 70 years prior to its conversion to commercial office space, used as Public School No. 3. Petitioners' current plans for this property include reconverting the existing building and constructing an addition thereto for school purposes. The property is located half in a C-1 neighborhood commercial zone and half in a C-2 highway commercial zone. The zoning ordinance does not list a school as an allowable principle, accessory or special permit use in either district. Petitioners' application for conversion back to school purposes was denied and petitioners applied to respondent City of Albany Board of Zoning Appeals (hereinafter BZA) for a use variance, area variances and a parking lot permit. The BZA denied the variances, finding essentially that petitioners failed to demonstrate either need or hardship which was not self-created.

Petitioners commenced this combined proceeding pursuant to

CPLR article 78 and action for declaratory judgment challenging the BZA's determination as arbitrary and capricious and seeking a declaration that the provisions of the City of Albany Zoning Ordinance, which excluded schools in commercial zones, were unconstitutional on their face or as applied. Supreme Court converted respondents' motion to dismiss for failure to state a cause of action to a summary judgment motion and declared the pertinent provisions of the zoning ordinance to be unconstitutional on their face and as applied. Further, Supreme Court declared the BZA's denial of the requested variances and parking lot permit to be arbitrary and capricious and directed the issuance of a special permit for the use of the property as a school.

Respondents appeal and allege that Supreme Court improperly relied on *Cornell Univ. v Bagnardi* (68 NY2d 583 [1986]) and *Trustees of Union Coll. in Town of Schenectady in State of N.Y. v Members of Schenectady City Council* (91 NY2d 161 [1997]) because the former involved the educational use of property in a residential zone and the latter involved the educational use of property in a residential historic zone, not a commercial zone as is here involved. We disagree, finding that the general principles enunciated in those cases apply with equal force to areas zoned commercial as well as those zoned residential. As therein pointed out, because of their inherently beneficial nature, educational institutions enjoy special treatment and are allowed to expand into neighborhoods where nonconforming uses would otherwise not be allowed. An ordinance which excludes educational uses from a zone deprives an applicant of any opportunity to demonstrate that its proposed educational use is consistent with the public good (*see Trustees of Union Coll. v Members of Schenectady City Council*, 230 AD2d 17, 21 [1997], *affd* 91 NY2d 161 [1997]). Accordingly, we agree with Supreme Court that the provisions of the City of Albany Zoning Ordinance that result in a wholesale exclusion of educational uses from the commercial districts in question are unconstitutional on their face.

Notwithstanding the foregoing analysis, we must reject Supreme Court's conclusion that petitioners are entitled to the issuance of a special permit. By so doing, the court stripped the BZA of its ability to engage in the deliberative process and to evaluate the proposed educational use against other legitimate interests which impact the public welfare. An educational use does not enjoy a conclusive presumption that it automatically outweighs its ill effects (*see Cornell Univ. v Bagnardi, supra* at 595). A special permit application should be submitted to the

BZA so that agency may engage in the requisite balancing to determine whether a special permit should, in fact, issue and, if so, whether reasonable conditions should be imposed that would mitigate any deleterious effects on the community. Reasonable conditions directly related to the public's health, safety and welfare may be imposed consistent with the exercise of the municipal police power (*see id.* at 596).

Cardona, P.J., Carpinello and Lahtinen, JJ., concur.

Spain, J. (concurring). This appeal presents the novel question of the applicability of the rationale underlying *Cornell Univ. v Bagnardi* (68 NY2d 583 [1986]) and its progeny to a request to locate a private, nonparochial, middle school in a *commercially* zoned district in which private schools are not permitted uses under the local zoning ordinance. Because I am concerned that existing precedent does not support a ruling that exclusion of private schools from designated *non*residentially zoned districts can never be upheld as an exercise of a municipality's police power to regulate land use, I write separately to express my views.

Unlike a public school whose location is governed under state law by boards of education (*see* Education Law § 2556), petitioner seeks to operate a charter school, which is considered a nonpublic school for purposes of local zoning and land use regulation (*see* Education Law § 2853 [3] [a]). Under well-established principles, municipal power to regulate land use is derived solely from the right to use police power, and must bear a substantial relationship to the community's health, safety, morals and general welfare (*see Cornell Univ. v Bagnardi, supra* at 594; *Matter of Concordia Coll. Inst. v Miller*, 301 NY 189, 196 [1950]; *see also Nectow v Cambridge*, 277 US 183, 188 [1928]; *Village of Euclid v Ambler Realty Co.*, 272 US 365, 387 [1926]). The fundamental and—I believe—narrow supposition underlying the *Cornell* line of cases is that "[b]ecause of the inherently beneficial nature of churches and schools . . . the total exclusion of such institutions *from a residential district* serves no end that is reasonably related to the morals, health, welfare and safety of the community" (*Cornell Univ. v Bagnardi, supra* at 594 [emphasis added], citing *Matter of Diocese of Rochester v Planning Bd. of Town of Brighton*, 1 NY2d 508, 522 [1956]; *accord Trustees of Union Coll. in Town of Schenectady in State of N.Y. v Members of Schenectady City Council*, 91 NY2d 161, 166 [1997]). As a result, a "decision to restrict a proposed educational use can only be made after the intended use is evaluated against other legitimate interests, with primary consideration given to the over-all impact on the public welfare" (*Trustees of*

*Union Coll. in Town of Schenectady in State of N.Y. v Members of Schenectady City Council, supra* at 166).

The special permit application process has been endorsed as the proper and necessary procedure for addressing requests by educational or religious institutions to locate or expand into residential districts (*see Matter of Pine Knolls Alliance Church v Zoning Bd. of Appeals of Town of Moreau*, 5 NY3d 407, 413 [2005]). This has entailed the balancing of the "inimical consequences" of the presence of those institutions in residential neighborhoods—employing traditional police power considerations (*e.g.*, public health, safety, welfare or morals, fire and similar emergency risks, and traffic safety to the extent it implicates public safety)—against "the important contribution made to society by educational [and religious] institutions" (*Trustees of Union Coll. in Town of Schenectady in State of N.Y. v Members of Schenectady City Council, supra* at 166; *see Matter of Pine Knolls Alliance Church v Zoning Bd. of Appeals of Town of Moreau, supra* at 412-413; *Cornell Univ. v Bagnardi, supra* at 594-596).

This line of cases has, until now, implicated the special treatment afforded to educational and religious institutions only *with respect to residential zoning* and, even then, has consistently "*rejected* any argument . . . that 'under no circumstances may [such uses] ever be excluded from designated areas' " (*Cornell Univ. v Bagnardi, supra* at 594 [emphasis added], quoting *Matter of Diocese of Rochester v Planning Bd. of Town of Brighton, supra* at 526). In my view, these precedents do not foreclose a finding that a zoning ordinance's noninclusion of private educational uses in a particular zoned district may be a valid, proper exercise of the municipality's police power. Unlike their expansion into residential areas which has long been held to be compatible with and in furtherance of the public good, locating schools in certain commercial, industrial, business, manufacturing, land conservation or other nonresidentially zoned districts may well be a justifiable, appropriate and legitimate municipal land use regulation which bears a substantial relation to the promotion of public health, safety and the like.

Concededly, there is some arguably broad language in recent Court of Appeals decisions, all involving educational uses in *residential* districts, which might support the conclusion that the "case-by-case review" contemplated and the endorsed special use permit application procedures could also apply in *any* zoning district in which such institutions request to locate or expand (*Matter of Pine Knolls Alliance Church v Zoning Bd. of Appeals of Town of Moreau, supra* at 412; *see Trustees of Union*

*Coll. in Town of Schenectady in State of N.Y. v Members of Schenectady City Council, supra* at 167). However, no case has held as much. In my view, the ratio decidendi of that line of cases, articulated thus far, appears limited to residential districts, based upon the presumed harmony between such institutions and residential communities and the need to protect those institutions from community hostility. Because the same reasoning does not necessarily and entirely apply in other zoning districts, I would not rule out the validity of a zoning ordinance's noninclusion of educational institutions in nonresidential districts.

However, under this City of Albany Zoning Ordinance, the C-1 Neighborhood Commercial District and the C-2 Highway Commercial District in which petitioner's property falls permit churches, religious institutions and residential uses as principal or special permitted permit uses (*see* Zoning Ordinance of City of Albany § 375-71 [A] [3], [7], [12] [C-1 district]), and day care centers (*see* Zoning Ordinance of City of Albany § 375-73 [C-2 district], § 375-71 [C] [4] [C-1 district]). Thus, on this record, I would not conclude that exclusion of private educational uses from these nonresidential districts is a rational exercise of the City's police power to regulate land use, and agree that to this extent the ordinance is unconstitutional, facially and as applied.

I otherwise agree with the majority decision.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as issued a special permit to petitioners; permit vacated and matter remitted to respondent City of Albany Board of Zoning Appeals for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed. [*See* 10 Misc 3d 870 (2005).]